**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA | CIVIL ACTION NO.: |
| Plaintiff, | |
| v. | |
| GETUP-UAW LOCAL 5124 | |
| Defendant. | |

**CIVIL ACTION COMPLAINT FOR DECLARATORY JUDGMENT**

## I.    PRELIMINARY STATEMENT

Plaintiff, The Trustees of the University of Pennsylvania (the "University") brings this action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking a declaratory judgment that a grievance filed by Defendant, GET UP UAW Local 5124 (the "Union") is not arbitrable.

The dispute concerns first and second year Educational Fellowship Recipients ("EFRs") in the Biomedical Graduate Studies ("BGS") Ph.D. program at the Perelman School of Medicine, who in years one and two of the program engage in exclusively academic activities—graded, credit-bearing coursework and required lab rotations. These first and second year students perform no research or instructional services for the University, are funded by University and school sources, and do not hold Teaching Assistant or Research Assistant appointments.

Given this, the University has consistently maintained that these students are not "employees" within the meaning of the National Labor Relations Act ("NLRA"), and repeatedly made that position clear in proceedings before the National Labor Relations Board ("NLRB"). It

maintained this same position throughout negotiations for the Parties' first collective bargaining agreement (the "CBA"), which culminated in clear, unambiguous CBA language excluding first and second year BGS students from the bargaining unit—language the Union expressly agreed to and adopted.

Notwithstanding this, on April 8, 2026—just weeks after the Parties finalized the CBA containing the exclusion—the Union filed a grievance alleging that the March 10, 2026 bargaining unit list compiled by the University improperly omitted certain first and second year BGS students. The University requested that the Union withdraw the grievance because it seeks to sweep statutorily excluded students into the unit, but the Union refused and has demanded to arbitrate this dispute.

Arbitration is a matter of consent, and the University did not agree to arbitrate the status of individuals expressly excluded from the bargaining unit. Because first and second year BGS students are outside the NLRA's coverage and outside the CBA by its negotiated terms, compelling arbitration would force the University to arbitrate an issue it never agreed to submit. As set forth more completely below, a real and ongoing dispute now exists regarding arbitrability, and a judicial declaration that the grievance is not arbitrable is necessary and appropriate to resolve the live controversy and provide complete relief from continued uncertainty.

## II.     **PARTIES**

1.     The University is a Pennsylvania nonprofit corporation operating an Ivy League university in Philadelphia, Pennsylvania. The University serves approximately 11,000 undergraduate and 17,000 graduate and professional students across twelve schools, including the Perelman School of Medicine.

2

2.      The Union is a labor organization that represents certain graduate and professional students who provide research or instructional services at the University's Philadelphia campus. The Union is the certified representative of a bargaining unit described in the Certification of Representative issued by the NLRB in Case 04-RC-327396.

3.      Plaintiff and Defendant entered into a CBA covering the period of February 27, 2026 through June 1, 2028. (*See* Exhibit ("Ex.") A, for a true and correct copy of the CBA).

## III.     **JURISDICTION AND VENUE**

4.      This Court has jurisdiction under Section 301 of the LMRA, 29 U.S.C. § 185, and 28 U.S.C. §§ 1331 and 2201.

5.      Venue is proper in this District under 28 U.S.C. § 1391 because the parties are located and the events giving rise to the claim occurred in Philadelphia, Pennsylvania.

## IV.     **FACTUAL ALLEGATIONS**

**A.      First and Second Year Educational Fellowship Recipients in the University's Biomedical Graduate Studies Program Are Students, Not Employees.**

6.      As set forth herein, the individuals who are now the subject of the instant grievance—first and second year EFRs in the University's BGS program—exclusively perform academic activities, and therefore, are students of the University, not its employees.

7.      The specific school at issue in the instant matter is the University's Perelman School of Medicine, which offers a Ph.D. program in BGS, among other programs.

8.      The BGS Ph.D. program takes approximately six years to complete.

9.      BGS Ph.D. students in their first and second years take a full courseload and are not obligated to (and do not) provide services to the University.

10.     During the first two years, BGS students take classes for which they receive grades and academic credit.

LEGAL\116881668\9

11.    BGS graduate students also must complete three (3) lab rotations during those first two years.

12.    A lab rotation generally does not last more than one semester, and BGS graduate students may skip a semester and not take a lab rotation or may take two lab rotations in one semester.

13.    These lab rotations are a required academic course with a corresponding course number in the University course catalog, for which first and second year BGS graduate students receive a grade and academic credit.

14.    Lab rotations are for the exclusive benefit of the student as they improve their research skills and determine an area of interest for their dissertation.

15.    At some point during their first or second year, a BGS student typically identifies a lab for purposes of working on their dissertation starting in their third year and will continue developing an area of interest for their future dissertation research in a lab.

16.    First and second year BGS students do not perform research services for the University during this time, as they are continuing to hone their research skills and explore potential research questions for their dissertation.

17.    These pre-dissertation studies are academic courses for which they receive academic credit and grades.

18.    Because first and second year BGS graduate students are not yet contributing research to the University, these students are funded exclusively through University or school funds, rather than through a grant obtained by a principal investigator ("PI") from an external source, like the federal government or a private foundation.

4

19. First and second year BGS students do not hold Teaching Assistant or Research Assistant appointments.

20. To progress to their third year and begin their dissertation research in the lab they identified, BGS students must take and pass a qualifying examination.

21. After they pass the qualifying examination, they are focused on addressing the question that will form the basis of their dissertation for the third through fifth years of their Ph.D. program.

22. Because the graduate student's dissertation research typically relates and contributes to the particular lab's overarching research focus (rather than the skill-building and thesis exploration done in the first and second years), graduate students in their third, fourth, and fifth years are funded under their PI's grant, not by University or school funds.

23. Only *after* the graduate student has completed their lab rotations, developed their research question for their dissertation, and passed their qualifying examination, do they then move into a role that is funded by a PI and in which they may be doing employment-related activities consistent with that funding. Prior to that time, all activities are academic and not employment.

24. Toward the end of the program, BGS students are focused on writing and ultimately defending their dissertation before a thesis committee that decides whether the particular student's scientific findings support the conferral of a Ph.D. degree.

## B. The University Has Consistently Maintained that First and Second Year BGS Students Are Performing Exclusively Academic Activities.

### i. Prior Proceedings Before the National Labor Relations Board.

25. The University has consistently maintained that first and second year EFRs in the University's BGS program exclusively perform academic activities, and therefore, are students of the University, not its employees.

26.     In 2017, the Union filed a petition with the NLRB docketed at Case 04-RC-199609, seeking to represent certain graduate students at the University.

27.     During the hearing in that case, the University argued that EFRs who do not perform services for the University – such as first and second year BGS students – are students, and not "employees" as defined by the NLRA.

28.     During that hearing, the Union conceded that EFRs who do not perform services for the University should be excluded from the unit because they were students rather than employees.

29.     Given this, in December 2017, the Regional Director for the NLRB issued a Decision and Direction of Election that excluded EFRs from the proposed unit, including the first and second year BGS students as agreed to by the Union.

30.     No election was held, however, because the Union withdrew that petition prior to the election.

31.     In 2023, the Union filed another petition docketed at Case 04-RC-327396, seeking to represent the following unit:

> All graduate students who provide research or instructional services, including but not limited to Teaching Assistants, Teaching Fellows, Research Assistants, Research Fellows, Pre-Doctoral Trainees, Student Workers, and Educational Fellowship Recipients, regardless of funding sources.

32.     The Parties reached agreement on all of the classifications at issue, except for EFRs, which was to be determined at a pre-election hearing.

33.     Again, as it had done previously, the University disputed the inclusion of first and second year BGS EFRs on the basis that they are not statutory "employees" within the meaning of the NLRA.

6

34.    The University also argued that the Union should be precluded from taking the position that such EFRs are employees, because the Union conceded in the 2017 proceeding that they were students, not employees, as they do not perform services for the University.

35.    On November 2, 2023, the Parties entered into a stipulation that was entered into evidence at the pre-election hearing as Board Exhibit 2, which stated as follows with respect to the disputed EFRs:

> Whether Educational Fellowship Recipients in lab rotations in the first year of the Biology PhD Program and the first and second years of the Biomedical Graduate Studies PhD Program provide research or instructional services for the University is in dispute. The issue of their eligibility will be litigated at hearing.

(*See* Ex. B, which contains a true and correct copy of Board Ex. 2 at Case 04-RC-327296).

36.    The Regional Director for Region 4 of the NLRB issued a Decision and Direction of Election on March 19, 2024, finding that the Union was precluded from relitigating the employee status of EFRs because of its contrary representations during the 2017 proceedings in Case 04-RC-199609.

37.    The Union petitioned the NLRB for review of the Regional Director's Decision and Direction of Election, and, on April 10, 2024, the NLRB issued an order reversing the Regional Director's Decision and Direction of Election, finding that the 2017 proceedings did not have a preclusive effect on the employee status of the EFRs in the present dispute. (*See* Ex. C, for a true and correct copy of the NLRB Order in Case 04-RC-327396).

38.    The NLRB further ordered that "first- and second-year PhD students in the Biomedical Graduate Studies program at the Perelman School of Medicine" must vote subject to challenge in the election. (*Id.*).

39.    Ultimately, the disputed EFRs voted subject to challenge in accordance with the NLRB's order.

7

40.    To facilitate the election, the University filed and served on the Region and the Union a Voter List.

41.    In a separate section of the Voter List, the University listed the disputed EFRs who would be voting subject to challenge, as required by NLRB regulations.

42.    The "voting subject to challenge" section of the Voter List identified all first and second year EFRs in BGS.

43.    The Union raised no concerns about any of the EFRs on the Voter List, and the Union did not raise any concerns that there were EFRs in the "voting subject to challenge" section who should have been listed in the section of the Voter List reserved for unchallenged voters.

44.    An election was held on April 16 and 17, 2024, and the Regional Director issued a Certification of Representative for the following unit:

> INCLUDED: All graduate and professional students who provide research or instructional services for the University, including those who serve as Teaching Assistants, Teaching Fellows, Research Assistants, Research Fellows, Pre-Doctoral Trainees, and Student Workers. This includes Educational Fellowship Recipients if they provide teaching or research services for the University, including those who serve as Teaching Assistants, Teaching Fellows, Research Assistants, Research Fellows, Pre-Doctoral Trainees, and Student Workers employed by the Employer at its Philadelphia, PA University.

> EXCLUDED: All other employees, students pursuing professional degrees in the Veterinary School, the Dental School, and the Medical School with the exception of professional students in those programs who are pursuing a joint degree and who qualify for inclusion by virtue of their research or instructional service for the University in conjunction with their other graduate or professional program, Educational Fellowship Recipients who do not provide teaching or research services for the University, guards and supervisors as defined in the Act.

(*See* Ex. D, which contains a true and correct copy of the Certification of Representative in Case 04-RC-327396).

8

45.    The Certification of Representative stated as follows related to BGS EFRs:

> However, the employees in the classifications of Educational Fellowship Recipients in lab rotations in the first year of the Biology PhD Program and the first and second years of the Biomedical Graduate Studies PhD Program are neither included in nor excluded from the bargaining unit covered by this certification, inasmuch as no decision has been made regarding whether the individuals in this group are included in, or excluded from, the bargaining unit. The resolution of their inclusion or exclusion was unnecessary because their ballots were not determinative of the election results.

(*Id.*).

ii.    <u>Bargaining Over the Inclusion of BGS EFRs in the Bargaining Unit</u>

46.    Following the certification of the results of the election, the Parties engaged in collective bargaining over the course of approximately sixteen months to reach agreement on a new CBA.

47.    One of the key issues that the Parties discussed at length was whether the disputed classifications of EFRs would be included in the bargaining unit.

48.    The Union sought to include them, while the University repeatedly rejected the Union's proposal.

49.    During these negotiations, the University again consistently maintained that first and second year EFRs in the University's BGS program exclusively perform academic activities, and therefore, are students of the University, not employees.

50.    At various points during the sixteen months that the Parties engaged in negotiations, the University provided several lists of all bargaining unit employees to the Union, in response to the Union's request for such information.

51.    Those lists did ***not*** include first and second year BGS students.

52.    The Union never questioned why those students were not included on those lists, nor did the Union object to the failure to include those students in the bargaining unit.

9

53.     As negotiations were drawing to a close, the Parties reached an agreement on the scope of the unit.

54.     Specifically, the Union stated that it was agreeing to the University's position on the student status of the first and second year BGS students.

55.     Accordingly, the Parties memorialized that agreement in the following language for the recognition provision of the CBA:

> INCLUDED: All graduate and professional students who provide research or instructional services for the University, including those who serve as Teaching Assistants, Teaching Fellows, Research Assistants, Research Fellows, Pre-Doctoral Trainees, and Student Workers. This includes Educational Fellowship Recipients if they provide teaching or research services for the University, including those who serve as Teaching Assistants, Teaching Fellows, Research Assistants, Research Fellows, Pre-Doctoral Trainees, and Student Workers employed at Penn at its Philadelphia, PA University.
>
> EXCLUDED: All other employees, students pursuing professional degrees in the Veterinary School, the Dental School, and the Medical School with the exception of professional students in those programs who are pursuing a joint degree and who qualify for inclusion by virtue of their research or instructional service for the University in conjunction with their other graduate or professional program, *Educational Fellowship Recipients who do not provide teaching or research services for the University*, *Educational Fellowship Recipients in lab rotations in the first year of the Biology PhD Program and the first and second years of the Biomedical Graduate Studies PhD Program*, guards and supervisors.

(*See* CBA, at Art. 1, attached as Ex. A) (emphasis added)).

56.     The CBA took effect on February 27, 2026. (*Id.*).

57.     The CBA contains a grievance and arbitration procedure. (*Id.*). A grievance is limited to "a claim or dispute regarding the interpretation, application, or alleged violation of specific terms or provisions of [the CBA]." (*Id.*).

LEGAL\116881668\9

**C.**     **The Union Files and Continues to Process Its Grievance Related to BGS EFRs, Despite Being Told in Unequivocal Terms that the Matter is Not Arbitrable.**

58.     After the Parties reached agreement on a new CBA and the Union's membership ratified the new CBA, the Union filed a grievance on April 8, 2026, alleging, for the first time, that the University failed to include certain EFRs in the bargaining unit. (*See* Ex. E for a true and correct copy of the Union's grievance).[1]

59.     Specifically, the Union alleged that the University failed to include in the bargaining unit "Educational Fellowship Recipients providing research services who have joined labs and are no longer on lab rotation." (*Id.*).

60.     While the grievance purports to seek to include EFRs "providing research services who have joined labs and are no longer on lab rotation," the reality is that the Union seeks to include the first and second year BGS students who it agreed would not be included in the unit and who are specifically excluded in Article 1 of the CBA.

61.     Those students do not "join labs" during those years and provide no research services to the University.

62.     Rather, as described above, they are performing exclusively academic functions, such as taking courses for academic credit, including their lab rotations.

63.     To the extent that BGS students "join" a lab, they do so for purposes of providing research services in their third year, and at that point are included in the bargaining unit.

64.     On May 7, 2026, the University denied the grievance on several grounds, including explicitly on the grounds that the grievance is not arbitrable.

---

[1] The Union attached to its grievance a list of students who it believes should be added to the bargaining unit. The University has excluded that attachment because it contains information protected by the Family Educational Rights and Privacy Act.

LEGAL\116881668\9

65.    The Union, however, did not withdraw its grievance and instead processed it further.

66.    On June 10, 2026, a third step grievance hearing was held, and again, the University reaffirmed its denial and denied the grievance as not arbitrable, among other reasons.

67.    Notwithstanding the above, the Union continued to process the grievance.

68.    On or about July 10, 2026, Ethan Hill for the Union submitted a request for arbitration to the American Arbitration Association ("AAA"). (*See* Ex. F, for a true and correct copy of the Union's arbitration demand).

69.    On or about July 16, 2026, AAA sent an initiation letter that confirmed that the office received a demand for arbitration from the Union. (*See* Ex. G, for a true and correct copy of the AAA initiation letter).

70.    As of the date of this filing, the Union has indicated that it intends to continue processing its grievance and to submit the matter for arbitration.

71.    The University has informed AAA that it objects to the continued processing of the grievance and demand for arbitration on the grounds that it is not substantively arbitrable.

### COUNT I: DECLARATORY JUDGMENT UNDER LMRA § 301
### NON-ARBITRABILITY ON THE GROUNDS THAT FIRST AND SECOND YEAR BGS STUDENTS ARE NOT STATUTORY "EMPLOYEES"

72.    The University realleges and incorporates by reference the foregoing paragraphs as if set forth in full herein.

73.    The Union's instant grievance and demand for arbitration is predicated on the presumption that first and second year BGS students are "employees" as defined by the NLRA, and thus capable of inclusion within the agreed-upon bargaining unit specified in the CBA.

12

74.    This presumption is inconsistent with clear federal labor law as pronounced by the NLRB.

75.    The NLRB has repeatedly recognized the crucial and longstanding distinction between "employees" on the one hand and "students" on the other. *See Trustees of Columbia University in the City of New York*, 364 NLRB 1080 (2016) (explaining that "[t]he National Labor Relations Act, as we have repeatedly emphasized, governs only the employee-employer relationship").

76.    In this regard, NLRB law emphasizes that where students perform work for their own academic purposes, and are provided funding to do so regardless of whether their activities also benefit the university/academic institution, these students are not "employees" as defined by the NLRA. *See, e.g., Massachusetts Institute of Technology*, Case 01-RC-304042 (2024) (Regional Director's decision applying the *Columbia University*, 364 NLRB 1080 (2016) precedent).

77.    As made clear above, first and second year BGS Ph.D. students take a full academic courseload and are not obligated to (and do not) provide services to the University.

78.    These students do not teach or conduct research for the University.

79.    These students focus on honing their own research and experiment skills for their personal academic benefit.

80.    The hallmark feature of "employment status," in which the employer retains the right to control and direct the individual's work for the employer's benefit in exchange for compensation, is entirely lacking with respect to first and second year BGS students.

81.    In short, first and second year BGS students are not "employees" as defined by the NLRA, and thus, are not subject to the CBA.

LEGAL\116881668\9

82.     Despite this, the Union has filed and has continued to process a grievance that directly contravenes clear federal labor policy and law.

83.     The Union has additionally submitted a demand for arbitration and has signaled its intention to continue processing the matter further, notwithstanding the University's clear and consistent protestations.

84.     Given this, there exists a live and actual controversy between the Parties concerning whether the Union's grievance, as set forth above, is substantively arbitrable under the CBA.

85.     A judicial declaration is therefore necessary and appropriate to clarify the employment status of first and second year BGS students, which would resolve the controversy and provide complete relief from continued uncertainty.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor, declaring that first and second year BGS students are not "employees" under the NLRA and not covered by the relevant collective bargaining agreement and thus, the Union's grievance is not substantively arbitrable, and that the Court grants such further relief as it deems just and proper.

### COUNT II: DECLARATORY JUDGMENT UNDER LMRA § 301 NON-ARBITRABILITY ON THE GROUNDS THAT THE INSTANT GRIEVANCE PRESENTS AN ISSUE THAT IS NOT COVERED BY THE CBA

86.     The University realleges and incorporates by reference the foregoing paragraphs as if set forth in full herein.

87.     The Union's instant grievance and demand for arbitration is improper on the separate, and alternative grounds, that it presents an issue that is not covered by the CBA and for which no agreement to arbitrate exists.

14

88.     Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he or she has not agreed so to submit. *See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted).

89.     The question of arbitrability is "undeniably an issue for judicial determination." *Id.* at 649.

90.     As made clear by the foregoing, the University did ***not*** consent to submit this issue, or any other issue related to first and second year students of the BGS Ph.D. program, to arbitration of any kind.

91.     Rather, the Parties agreed, and the CBA expressly provides, that "Educational Fellowship Recipients who do not provide teaching or research services for the University," and "Educational Fellowship Recipients in lab rotations in the first year of the Biology PhD Program and the first and second years of the Biomedical Graduate Studies PhD Program," are excluded from the bargaining unit, and therefore are not covered by the terms of the CBA, including but not limited to the grievance and arbitration provisions.

92.     That agreement is consistent with the Parties' extensive bargaining history and the prior proceedings before the NLRB in which the University repeatedly emphasized that first and second year BGS participants do not provide research or teaching services for the University, and otherwise perform exclusively academic activities, thereby classifying them as students, and not employees as defined by the NLRA.

93.     First and second year BGS students are therefore not within the bargaining unit.

15

94.     Yet, despite years of discussing this issue, and despite agreeing to language in the CBA that first and second year students in the BGS Ph.D. program are excluded from the bargaining unit because they do not perform research services, the Union filed and continues to process a grievance on this issue and has submitted a demand for arbitration.

95.     The Union's continued processing of this grievance constitutes a clear repudiation of the language of the CBA and an improper attempt to subject the University to arbitrate an issue that it did not agree to arbitrate.

96.     Alternatively, the Union's continued processing of this grievance evidences that there is no meeting of the minds as between the Parties concerning the inclusion or exclusion of first and second year BGS students within the bargaining unit, which again confirms that the University did ***not*** agree to submit this issue to arbitration.[2]

97.     Given this, there exists a live and actual controversy between the Parties concerning whether the Union's grievance, as set forth above, is substantively arbitrable under the CBA.

98.     A judicial declaration is therefore necessary and appropriate to clarify that the Parties did not consent to submitting the issue posed by the Union's grievance to arbitration and would finalize the controversy and provide relief from continued uncertainty.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in its favor, declaring that the Union's grievance is not covered by the CBA, which explicitly excluded first and second year BGS students from the bargaining unit, and to declare that the

---

[2] The Union's grievance is, at bottom, an impermissible effort to sidestep the NLRB's authority to decide questions of representation by asking an arbitrator to resolve them. The Board has long made clear that issues of representation, accretion, and appropriate unit turn on statutory policy and criteria, not contract interpretation, and thus are for the Board—not an arbitrator—to decide. *See Marion Power Shovel Co., Inc*., 230 NLRB 576, 577–78 (1977). The NLRB's own Casehandling Manual likewise confirms that the Board, not an arbitrator, must resolve matters that involve unit determinations or other representation-type issues. *See* NLRB, Office of the General Counsel, Unfair Labor Practice Casehandling Manual § 10118.1 (Mar. 2026) (*citing St. Mary's Med. Ctr*., 322 NLRB 954 (1997)). That settled allocation of authority reinforces that the Parties—and certainly the University—never contemplated submitting this issue to arbitration.

grievance is not substantively arbitrable, and that the Court grants such further relief as it deems just and proper.

Respectfully submitted,

COZEN O'CONNOR

By: *s/ George A. Voegele, Jr.*
George A. Voegele, Jr. (PA 76812)
Joseph A. Scopelitis (PA 328981)
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone:  (215) 665-5595

-and-

Anneliese Wermuth (*pro hac vice motion forthcoming*)
123 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Telephone: (312) 474-7876

*Attorneys for Plaintiff*

Date: August 7, 2026

17