**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,**<br><br>**Plaintiff,**<br>**v.**<br><br>**GETUP-UAW LOCAL 5124,**<br><br>**Defendant.** | : | **CIVIL ACTION**<br>**NO.: 2:26-cv-05658** |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS**

Defendant GETUP-UAW Local 5124 (the "Union") by and through the undersigned counsel and pursuant to Federal Rules of Civil Procedure 12 (b)(1) and 12(b)(6) moves the Court to dismiss the Complaint of Plaintiff Trustees of the University of Pennsylvania (the "University"). In support thereof, the Union submits the following:

## I. STATEMENT OF THE FACTS

This case arises out of a grievance filed by the Union concerning the Recognition Clause of the collective bargaining agreement ("CBA"). As stated in the Complaint, in 2023, the Union filed a petition with the National Labor Relations Board ("NLRB") seeking to represent "All graduate students who provide research or instructional services, including but not limited to Teaching Assistants, Teaching Fellows, Research Assistants, Research Fellows, Pre-Doctoral Trainees, Student Workers, and Educational Fellowship Recipients, regardless of funding sources." Complaint ¶31. The NLRB held a preelection hearing on the Union's petition. Complaint ¶35. Prior to the hearing the parties stipulated that all of the categories in the Union's

petition were employees, except they could not reach an agreement on the status of educational fellowship recipients ("EFRs") in lab rotations in the first year of the Biology PhD program and in the first and second year of the Biomedical Graduate Studies ("BGS") PhD Program. Complaint ¶35. The matter was litigated in the Philadelphia Regional Office of the NLRB, and the Regional Director's decision was appealed to the NLRB in Washington D.C. Complaint ¶¶36-37. The NLRB's ultimate decision was that the graduate employees could proceed to an election to decide whether to unionize, but that "first-year Biology PhD students in the University's School of Arts and Sciences, and first- and second-year PhD students in the Biomedical Graduate Studies program at the Perelman School of Medicine" may vote subject to challenge. Complaint ¶37 and Exhibit C. In other words, the status of those individuals was left undetermined by the NLRB.

An election was held in which a majority of the non-challenged ballots voted in favor of the Union and the margin in favor of the Union was sufficiently large so that the number of challenged ballots was not determinative of the outcome of the election. Complaint Exhibit D. As a result, the NLRB issued a certification that the Union was the bargaining representative of the employees who were stipulated to by the parties prior to the hearing. *Id.* However, it noted that "the employees in the classifications of Educational Fellowship Recipients in lab rotations in the first year of the Biology PhD Program and the first and second years of the Biomedical Graduate Studies PhD Program are neither included in nor excluded from the bargaining unit covered by this certification." *Id.*

After the certification, the parties negotiated a collective bargaining agreement ("CBA"), which included a Recognition Clause that sought to address the status of the EFRs left

indeterminate by the NLRB. Complaint ¶¶46-49, 53. The recognition clause defines the employees covered by the CBA as follows:

> **INCLUDED:** All graduate and professional students who provide research or instructional services for the University, including those who serve as Teaching Assistants, Teaching Fellows, Research Assistants, Research Fellows, Pre-Doctoral Trainees, and Student Workers. This includes Educational Fellowship Recipients if they provide teaching or research services for the University, including those who serve as Teaching Assistants, Teaching Fellows, Research Assistants, Research Fellows, Pre-Doctoral Trainees, and Student Workers employed at Penn at its Philadelphia, PA University.
>
> **EXCLUDED:** All other employees, students pursuing professional degrees in the Veterinary School, the Dental School, and the Medical School with the exception of professional students in those programs who are pursuing a joint degree and who qualify for inclusion by virtue of their research or instructional service for the University in conjunction with their other graduate or professional program, **Educational Fellowship Recipients who do not provide teaching or research services for the University, Educational Fellowship Recipients in lab rotations in the first year of the Biology PhD Program and the first and second years of the Biomedical Graduate Studies PhD Program**, guards and supervisors.

Complaint Exhibit A at p. 3 (emphasis added).

The CBA also includes a Grievance and Arbitration provision to resolve grievances between the parties. The CBA defines a "grievance" to be "a claim or dispute regarding the interpretation, application, or alleged violation of a specific term of this Agreement" and states that any such grievance "shall be processed" using the procedures set forth in that article. Complaint Exhibit A at p. 12. The grievance process has four steps which culminates with arbitration, and it states that the decision of the arbitrator "shall be final, conclusive, and binding[.]" Complaint Exhibit A at p. 14.

On April 8, 2026, when it learned that the University was excluding from the Union's bargaining unit EFRs who provide research services and are no longer in lab rotation, the Union filed a grievance alleging that the University was acting in violation of the Recognition Clause of the CBA.[1] Complaint Exhibit E. The parties were unable to resolve the grievance during the initial steps of the grievance process, and pursuant to the grievance and arbitration provisions in the CBA, the Union submitted a request to the American Arbitration Association for the appointment of a neutral arbitrator. Exhibit F. Rather than participating in the dispute resolution procedure the parties agreed to when they negotiated the CBA, the University filed this lawsuit pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. §185 ("Section 301").

## II. STANDARD OF REVIEW

### A. Standard of Review for 12(b)(1) Motions

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal of any claim over which the district court lacks subject matter jurisdiction. A motion to dismiss under Rule 12(b)(1) therefore challenges the power of a federal court to hear a claim or case. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). When faced with a 12(b)(1) motion, the plaintiff must bear the burden of persuasion to convince the court that it has jurisdiction. *Gould*

[1] The grievance also challenged the exclusion of certain other EFRs performing teaching services and research services. Complaint Exhibit E. The status of those other categories are no longer at issue and the only portion of the grievance that remains an issue in this lawsuit and in the arbitration case is whether PhD students in their first or second year of the BGS PhD program and the first year of the Biology PhD program who have completed their rotations are "employees" under the CBA. See Complaint ¶73. Notably, while the grievance challenged the exclusion of EFRs who had finished their rotations in the first and second year of the BGS PhD programs and the first year of the Biology PhD program, the Complaint appears to only seek a declaratory judgment about the BGS group.

*Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (citation omitted).

**B. Standard of Review of 12(b)(6) Motions**

Federal Rule of Civil Procedure 8 requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court held that to satisfy Rule 8, a complaint must contain factual allegations that, taken as a whole, render the plaintiff's entitlement to relief plausible. 550 U.S. 544, 556, 569 n. 14 (2007); *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 246 (3d Cir. 2010); *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). This "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). In determining whether a complaint is sufficient, courts should disregard the complaint's legal conclusions and determine whether the remaining factual allegations suggest that the plaintiff has a plausible—as opposed to merely conceivable—claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The factual allegations must be specific enough so as to provide a defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S., at 455. While the court draws all reasonable factual inferences in the light most favorable to a plaintiff, it rejects unsupported allegations, "bald assertions," and "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted).

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts typically will: (1) take note of the elements a plaintiff must plead to state a claim; (2) identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) where there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Santiago v. Warminster Twp*., 629 F.3d 121, 129-30 (3d Cir. 2010). The Court should not accept as true conclusory or unsupported assertions that are not well-pleaded facts. *Twombly*, 467 U.S. at 752. In addition, courts should not assume that a plaintiff can prove facts beyond those alleged in the complaint. *See Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). The plaintiff must plead factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. A complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." *See Twombly*, 550 U.S. at 561 (brackets omitted).

## III. ARGUMENT

### A. The Court Lacks Subject Matter Jurisdiction to Adjudicate Plaintiff's Claims

This Court lacks subject matter jurisdiction over this controversy because the parties have agreed to arbitrate all disputes under the CBA. There is a "well-established federal labor policy favoring arbitration as a means of resolving disputes over the meaning and effect of collective bargaining agreements." *Nolde Bros. v. Bakery & Confectionery Workers Union*, 430 U.S. 243, 254 (1977). See *Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 377 (1974) ("federal policy favoring arbitration of labor disputes is firmly grounded in congressional command*")*; *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 549, (1964) (noting the "preference of national labor

policy for arbitration"); *Shaffer v. Mitchell Transp., Inc.*, 635 F.2d 261, 265 (3d Cir. 1980); *Cascades Tissue Grp. - Pa., Inc. v. United Steel*, 119 F. Supp. 3d 307, 313 n.2 (E.D. Pa. 2015).

The grievance and arbitration provision in the CBA covers any "claim or dispute regarding the interpretation, application, or alleged violation of specific terms or provisions of this Agreement." Complaint Exhibit A at p. 12. The CBA uses mandatory language, specifying that such a dispute "shall be processed in accordance with the procedures outlined" in the Grievance and Arbitration procedures. *Id.* (emphasis added). The NLRB has recognized that arbitration, not an NLRB proceeding, is the appropriate forum to resolve a dispute when "resolution of the issue turns solely on the proper interpretation of the parties' contract." *St. Mary's Medical Center*, 322 NLRB 954, 954 (1997).

The dispute whether first or second year EFRs in the BGS PhD program who have completed their rotations are "employees" covered by the CBA is clearly and unambiguously a dispute regarding the interpretation and application of the Recognition Clause of the CBA. The Recognition Clause specifically excludes first and second year BGS students who are "in lab rotations" (Complaint Exhibit A at p. 3), and thus for those who have completed their lab rotation, the Union argues, they should no longer be excluded. See Complaint ¶59. The University may argue that those students "do not perform teaching or research services for the University" pointing to a different part of the exclusion clause. Either way, both parties' arguments are about contract interpretation, which is the exclusive purview of the arbitrator.

Because this dispute is covered by the negotiated grievance and arbitration procedures, the dispute must be arbitrated, not litigated. *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986) ("where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[an] order to arbitrate the particular grievance should not be denied unless it may

be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'") (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)) *See SEIU Healthcare PA v. Heritage Valley Health Systems*, 842 Fed. Appx. 757 (3d Cir. 2021) (requiring arbitration because of the collective bargaining agreement's broad arbitration clause); *Lukens Steel Co. v. United Steelworkers of Am.*, 989 F.2d 668 (3d Cir. 1993) (rejecting an employer's §301 lawsuit seeking to block arbitration because the dispute was covered by the collective bargaining agreement's arbitration provision).

That conclusion is further supported by the fact that the CBA expressly excludes some controversies from the Grievance and Arbitration procedures. For example, under Article 18, Section 6(C)(b), the University's discretionary decisions concerning family and parental leave "shall not be used as the basis for any future grievance, arbitration, or bargaining demand." Complaint Exhibit A at p. 24. Likewise, under Article 24, Section 2, the University's decisions regarding finding alternative employment for workers who are unable to return to the United States because of their immigration status "may not be taken to arbitration under the Grievance and Arbitration provisions of this Agreement." Complaint Exhibit A at p. 32. In *Eichleay Corp. v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*¸ 944 F.2d 1047, 1058-59 (3d Cir. 1991), the Third Circuit noted that when a collective bargaining agreement expressly excludes other issues from arbitration it "indicates the parties knew how to remove issues from arbitration when they wanted to" and thus "[i]n the absence of an express exclusion or very definitive evidence that the parties intended to remove" the issue from arbitration, the issue is subject to the arbitration provision of the agreement. The same logic applies here. The University and Union knew how to exclude provisions from the arbitration provision in the CBA because they expressly did so in

Article 18, Section 6(C)(b) and Article 24, Section 2. By not excluding the Recognition Clause from arbitration, the parties clearly intended to resolve any controversies about the scope and meaning of that clause through the Grievance and Arbitration procedure.

The University argues that the Union's arbitration request is contrary to "federal labor policy" and suggests that the arbitration request is "an impermissible effort to sidestep the NLRB's authority to decide questions of representation by asking an arbitrator to resolve them." Complaint ¶¶82 and 96 ftnt. 2.[2] But while the NLRB has the power to decide questions of representation, a union and employer may negotiate the contours of a unit after an NLRB certification. As the First Circuit explained, although "the scope of the bargaining unit is for the NLRB to decide…. that's not to be confused with who fits within the definition of an already-established NLRB-recognized unit." *President & Fellows of Harvard College v. Harvard Graduate Students Union - United Autoworkers*, No. 25-1598, 2026 LEXIS 535852, at *16-17 (1st Cir. Sep. 14, 2026). See *Times Pub. Co. v. Erie Newspaper Guild, etc.*, 527 F. Supp. 1131, 1134 (W.D. Pa. 1981) ("Even if we assume that the NLRB does retain some jurisdiction in this area, it is clear that that jurisdiction in no way acts as a bar to the arbitration of this grievance.")[3] The scope of a bargaining unit is a permissive subject of bargaining under the National Labor Relations Act, the same Act that establishes the NLRB's authority to certify bargaining units. *See*

[2] The University has alleged that "whether the disputed classifications of EFRs would be included in the bargaining unit was "[o]ne of the key issues" during the sixteen months of contract negotiations. Complaint ¶47. But if their inclusion in the unit can only be decided by the NLRB and is not a contractual issue, then why did the parties spend more than a year negotiating over that issue?

[3] The NLRB has also deferred to an arbitrator's determination about the scope of a unit holding: "where, as here, a question of contract interpretation is in issue, and the parties thereto have set up in their agreement arbitration machinery for the settlement of disputes arising under the contract, and an award has already been rendered which meets Board requirements applicable to arbitration awards, we think that it would further the underlying objectives of the [National Labor Relations] Act to promote industrial peace and stability to give effect thereto." *Raley's, Inc.*, 143 NLRB 256, 259 (1963).

*Tecnocap, LLC v. NLRB*, 1 F.4th 304, 315 (4th Cir. 2021). Because the parties may bargain over the contours of the unit, they may reach agreements on that issue and make it subject to the grievance and arbitration procedure.

The facts in *Harvard College* closely parallel the facts in this case. The union in *Harvard College* was certified as the bargaining representative of certain graduate workers at that university and the parties negotiated a collective bargaining agreement with a recognition clause that defined who was included in the bargaining unit. 2026 LEXIS 535852, at *2-3. Harvard did not include some graduate workers in the Psychology Department because it claimed their work was purely educational and thus they did not fit the definition of "employees" under the National Labor Relations Act, echoing the University of Pennsylvania's arguments in this case. *Id.* at *6. After an arbitrator ruled that the graduate workers should be included in the bargaining unit, Harvard brought a lawsuit to vacate the arbitrator award. *Id.* at *10-11. Both the District Court and the First Circuit ruled against Harvard, finding that the issue of who is included in the recognition clause could be decided by the arbitrator because the contract broadly defined a grievance to include disputes regarding "the interpretation, the application, or claimed violation(s) of specific provision(s)" of the contact. *Id.* at *17. That language echoes the Grievance and Arbitration clause in this case, which covers any "claim or dispute regarding the interpretation, application, or alleged violation of a specific term" of the CBA. Complaint Exhibit A at p. 14.

Two additional factors present here make arbitration even more appropriate than it was in *Harvard College*. First, in *Harvard College* the arbitration decision had already issued,[4] which meant that the Court was able to examine whether the arbitrator's decision really did impede

[4] Harvard, unlike the University of Pennsylvania in this case, first exhausted its contractual remedies before bringing a 301 lawsuit. See part III.B. *infra*.

upon the jurisdiction of the NLRB, whereas in this case, where the University seeks to block arbitration from taking place, the University's argument is based on pure speculation. Second, unlike the Psychology graduate students in *Harvard College*, the NLRB expressly declined to rule either way on the status of first and second year BGS students at issue here. As a result, the status of those BGS students was specifically addressed during negotiations, which puts the language of the Recognition Clause produced by those negotiations directly within the jurisdiction of an arbitrator who is empowered the resolve any "claim or dispute regarding the interpretation, application, or alleged violation of a specific term of this Agreement." Complaint Exhibit A at p. 12. Thus, arbitration, and not a Section 301 lawsuit, is the proper forum to decide this issue.

**B. Plaintiff Failed to Exhaust the Remedies under the Contractual Grievance Procedure Before Bringing this Action**

Even if the Court has subject matter jurisdiction to adjudicate this action, it is well established that in a Section 301 lawsuit, the Plaintiff must first exhaust the remedies set forth under the CBA by arbitrating the dispute before bringing this action. *Koshatka v. Philadelphia Newspapers, Inc*., 762 F.2d 329, 334 (3d Cir. 1985), *Carpenter v. Wawa*, No. 09-2768, 2009 U.S. Dist. LEXIS 112509, at *7-8 (E.D. Pa. Dec. 3, 2009). While there is an exception to the exhaustion requirement in cases where "the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" any doubts "should be resolved in favor of coverage." *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1537 (3d Cir. 1992) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, (1965); *Griesmann v. Chemical Leaman Tank Lines, Inc.*, 776 F.2d 66 (3d Cir. 1985).

In this case, the parties' dispute is about the interpretation of the Recognition Clause of the CBA. Specifically, the dispute concerns whether the exclusion of EFRs "who do not provide teaching or research services for the University… [EFRs] in lab rotation in the first year of the Biology PhD Program and the first and second years of the Biomedical Graduate Studies PhD Program" applies to EFRs in those programs who are no longer in lab rotations. The entire dispute is based upon the wording of that Recognition Clause language. The arbitration clause of the CBA broadly applies to any "claim or dispute regarding the interpretation, application, or alleged violation of a specific term of this Agreement." Complaint Exhibit A at p. 12. Thus, there is no doubt that this dispute falls squarely under the arbitration provision. Moreover, that provision uses mandatory language, stating that dispute about the interpretation, application, or alleged violations of contract terms "shall be processed" using those procedures and that the decision of an arbitrator at the culmination of that process "shall be final conclusive, and binding[.]" Complaint Exhibit A at pp. 12 and 14.

Both the plain and unambiguous language of the CBA and legal precedent make clear that the University was required to arbitrate this dispute and must arbitrate the dispute before bringing a lawsuit under Section 301. Because that process was not exhausted, this lawsuit should be dismissed.

## V. CONCLUSION

For the foregoing reasons, this action should be dismissed with prejudice as it is a matter purely of contractual interpretation which is subject to the grievance and arbitration provisions that the parties agreed to when they negotiated the CBA. Thus, the Court lacks subject matter jurisdiction to hear the case. In the alternative, even if there may eventually be a justiciable controversy under Section 301, this lawsuit should be dismissed without prejudice to allow the parties to first exhaust the grievance procedure before the University may bring this lawsuit.

Respectfully submitted,

SPEAR WILDERMAN, P.C.

By: */s/ Jeremy E. Meyer*
JEREMY E. MEYER, ESQUIRE
(PA Bar # 85303)
230 South Broad Street, Suite 1650
Philadelphia, PA 19102
(215) 732-0101
jmeyer@spearwilderman.com

Dated: October 19, 2026